## Case No. 14,649a.

UNITED STATES v. BRISTOW.

[See Case No. 3,393.]

## Case No. 14,650.

UNITED STATES v. BRITTON.

[2 Mason, 464.] [1]

Circuit Court, D. Massachusetts. May Term, 1822.

FORGERY — DESTRUCTION BY DEFENDANT OF FORGED INSTRUMENT—INDICTMENT—PROOF OF—WHERE TRIED.

1. In an indictment for forgery, it is in general necessary to set forth the tenor of the instrument; and it must be proved as it is set forth.

2. It seems, that if the instrument be destroyed or suppressed by the prisoner, that fact being stated in the indictment will be a sufficient excuse for not setting forth the tenor.

[Cited in State v. Bryant, 17 N. H. 328; Moran v. Roberge, 84 Mich. 603, 48 N. W. 164.]

3. If the instrument is destroyed or suppressed by the prisoner, the tenor may be proved by parol evidence; the next best evidence is the rule; therefore if there be a copy which can be sworn to, that is the next best evidence.

[Cited in Com. v. Abbott, 130 Mass. 473; Nicholson v. Tarpey, 89 Cal. 622, 26 Pac. 1101. Cited in brief in Rhode v. McLean, 101 Ill. 469; Taylor v. McIrvin, 94 Ill. 490. Cited in note to Thompson v. Thompson, 9 Ind. 336.]

4. A check drawn in Philadelphia on Boston, in favor of the prisoner, who was then in Philadelphia, and who produces the check altered in Boston, if there be no evidence that it was altered elsewhere, it is prima facie evidence, that it was altered in Massachusetts, that being the first state, where it is known to be altered.[1]

[Cited in Com. v. Costley, 118 Mass. 26; State v. Yerger, 86 Mo. 39; Spencer v. Com., 2 Leigh, 757.]

5. Forgeries under the laws of the United States, must be tried in the district, where the crime is committed.

[6. Cited in State v. Houser, 26 Mo. 432, and Simmons v. State, 5 Ohio St. 352, to the point that there is no difference as to the rules of evidence between criminal and civil suits.]

Indictment for a forgery in altering a bank check. The indictment contains three counts. The substance of the first count was, that John Britton, the prisoner, having in his possession a certain order and check on the cashier of the office of discount and deposit of the Bank of the United States, at Boston, (setting forth in words and figures an order for $104, on the said cashier, signed by Thomas Wilson, the cashier of the parent bank at Philadelphia,) the said Britton, at said Boston, on the 31st of December, then last past, altered the said check, by obliterating and defacing the words, "one hundred and four," and writing the words, "nine hundred and ninety," with the intent to defraud the said bank, &c. The second count stated in substance, that the prisoner having in his possession, on the said 31st of December, a certain altered order and check, &c. (setting forth the same in words and figures,) did feloniously utter and publish the said order and check as true, he at the time of altering, &c. well knowing the same to be falsely altered, with intention to defraud the said bank, &c. The third count stated, in substance, that the prisoner feloniously altered and forged at said Boston, on the 31st of December, a certain order and check on the said bank, setting forth the same as before, in words and figures.

The material facts were, that the genuine check was drawn in Philadelphia, on the 26th of December, 1821, payable to the order of John Britton, the prisoner, for $104. The prisoner was at that time in Philadelphia, but the check was not procured by him personally, but through a broker of that city. On the 31st of December, 1821, the prisoner presented the check at the branch bank in Boston for payment, it being then altered to the sum of $9,090, and admitted his name to be John Britton, and that the bill was payable to him, and that the endorsement of his name on the back of it was his hand writing. The check was examined by the teller and cashier of the bank, and believed to be genuine; but the sum being large, and the appearance of the prisoner somewhat suspicious, payment of the check was ultimately refused, and the check at the prisoner's request was returned to him. The prisoner left the bank, but was watched, and his conduct appearing more suspicious, he was finally brought back to the bank, having been followed to Cambridge, and then the check was not to be found; but upon examination and search he declared it to be lost. The prisoner was ultimately committed to prison for trial. There was no proof in the case as to the time, manner, or circumstances, under which the prisoner became possessed of the check, nor when, nor by whom the alteration was made, nor when the prisoner left Philadelphia and arrived at Boston. But it was in evidence, that he might have arrived there in the stage within three days, and that if he left Philadelphia on the day the check was drawn, he could have arrived at Boston two days before the check was presented. The prisoner offered no explanation or evidence, to rebut any of the presumptions arising out of the facts against him. It appeared, that all the checks drawn upon the branches of the bank were of one uniform printed form and impression, in which blanks are left for the date, number, sum, person to whom payable, and the signature of the cashier, and the present check was drawn upon one of these printed forms. It also appeared in evidence, that the bank checks were bound up in a book, and when cut out, a memorandum was made in the margin of the book, of the number, date, sum, and person to whom made payable; and the book produced contained such a memorandum of the original check in this case. No copy of this check was taken and compared by any person with the original; but the cashier of

---

[1] [Reported by William P. Mason, Esq.]